UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

|  | Plaintiff, | Civil Action No. 14-20810 |
| --- | --- | --- |
|  |  | Honorable Paul D. Borman |
| v. |  | Magistrate Judge David R. Grand |

MARK MILES HOOPER,

Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE [67]

Before the Court is Defendant Mark Miles Hooper's ("Hooper") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. #67). The Government filed a response in opposition to Hooper's motion (Doc. #73), and Hooper filed a reply. (Doc. #74). An Order of Reference was entered on September 27, 2017, referring Hooper's motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #75).

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Hooper's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence **(Doc. #67)** be **DENIED** and that a Certificate of Appealability also be **DENIED**.

## II.    REPORT

### A.    Background

On June 17, 2015, Hooper, represented by attorney Dennis A. Johnston ("Johnston"), entered into a Rule 11 plea agreement and plead guilty to conspiracy to possess with intent to distribute and to distribute cocaine (Count One) and distribution of over 500 grams of cocaine (Count Two), in violation of 21 U.S.C. §§ 846 and 841(a)(1), respectively. (Docs. #44; #63 at 19, 21). In the Rule 11 plea agreement, the parties agreed to a sentencing guideline range of

188-235 months pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").  (Doc. #44 at 3) ("There are no sentencing guideline disputes.").  In calculating that guideline range, the total offense level increased from 21 to 31 based on Hooper's two prior controlled substance convictions and application of U.S.S.G.'s "career offender" provision, which provides for an enhanced "offense level" if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Although the total offense level increased, Hooper's criminal history category remained at VI.  (Doc. #44 at 14).  The mandatory minimum sentence of imprisonment for Counts One and Two was 60 months, and the mandatory minimum term of supervised release for both counts was 3 years.  (*Id.* at 5, 14, 16).  As part of the plea agreement, Hooper waived his right to appeal his conviction.  (*Id.* at 6).  He also waived his right to appeal his sentence, as long as the sentence imposed did not exceed the maximum sentence allowed by the plea agreement.  (*Id.*).

In its November 12, 2015 Sentencing Memorandum, the Government calculated the same sentencing guideline range as before:  188-235 months and a period of supervised release of at least 3 years.  (Doc. #52 at 8).  Meanwhile, Johnston requested a variance to 60 months of imprisonment on Counts One and Two – the mandatory minimum – "to be served concurrently with the undischarged term of imprisonment in the Michigan state parole case."  (Doc. #53 at 11).  Johnston disputed Hooper's "'career offender' status" under U.S.S.C. § 4B1.1, which, as noted, was based on two prior "controlled substance offense[s]" as defined by U.S.S.C. § 4B1.2: (1) possession with intent to deliver less than 50 grams of cocaine on April 24, 2008; and (2)

delivery of less than 50 grams of cocaine on December 15, 2008.  (*Id.* at 5).  Johnston argued

that these two offenses should not "reasonably result" in Hooper being classified a "career

offender" with a 188-235-month sentencing guideline range because both offenses involved

"relatively small quantities of cocaine" (approximately 6.5 grams) and because Hooper "was

sentenced two days apart to concurrent three-to-fifteen-year terms of imprisonment for each

offense."[1]  (*Id.* at 5-6).  Johnston thus advocated for a downward departure under U.S.S.C. §

4A1.3(b)(1)[2] to avoid counting "multiple prior petty sentences" in a way that "over-represents

the seriousness of [Hooper's] criminal history and the extent of the danger that [he] presents to

the public."  (*Id.* at 6-7).  Moreover, Johnston calculated that without the career-offender

enhancement, the sentencing guideline range for Hooper would instead be 70-87 months.[3]  (*Id.* at

---

[1]

 During the sentencing hearing in the instant federal criminal action, the Government recognized that "[i]t would appear that but for a scheduling conflict in Oakland County of about three days or so, [Hooper] might not . . . be a career offender had he been sentenced on the same day on both of those cases because the convictions would have happened on the same date."  (Doc. #62 at 17).  Despite giving consideration to this "technical issue," the Government still argued for "career offender" status because it was unwilling to "ignore all of those transgressions by writing them off as low-level felony offenses" or to "minimize that they exist."  (*Id.* at 17-18).  The Government asserted that even though Hooper expressed a commitment to "change his ways" at the hearing, "it doesn't minimize" that these prior convictions "result in a particular criminal history that the Court has to consider in fashioning a sentence."  (*Id.* at 18).

[2] U.S.S.C. § 4A1.3(b)(1), which is called "Departures Based on Inadequacy of Criminal History Category (Policy Statement)," provides as follows:

> **(b)** Downward Departures.--
>
> > **(1)** Standard for Downward Departure.--If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1).

[3] Specifically, Johnston calculated that Hooper's 2008 felony offenses, "which represent the true extent of [his] criminal history," would assess Hooper with 9 criminal history points.  (Doc. #53

7).  He also pointed out that Hooper's co-defendant Cordell Wilson – "the principal offender" and "the target of the investigation from its inception" – was going to be sentenced based on an a sentencing guideline range of 70-87 months, despite a prior armed robbery conviction ("a capital offense carrying a maximum penalty of up to life in prison") from February 21, 1997.  (*Id.* at 8-9).  Given Wilson's 70-87-month guideline range, Johnston asked that Hooper be granted a variance to 60 months "to avoid an unwarranted sentencing disparity which this Court is statutorily[]constrained to consider" pursuant to 18 U.S.C. § 3553(a)(6).[4]  (*Id.* at 9, 11).  In further support of this request, he argued that the "harsh conditions of incarceration" Hooper had endured since his arrest constituted mitigating circumstances to warrant a sentencing departure and that a 60-month prison term would adequately deter criminal conduct and protect the public,

---

at 7).  He also calculated that Hooper would be assessed 2 additional points "for being on state parole status at the time the instant offense was committed."  (*Id.*).  Yet in Johnston's view, Hooper would score 0 criminal history points for the misdemeanor and resisting and obstructing offenses, which he characterized as "low-severity state felony offenses where the underlying facts in each case reflect that [Hooper] is alleged to have done nothing more than attempt to flee the scene on foot upon being approached by the police."  (*Id.*; Doc. #62 at 8-9).  Likewise, Johnston argued that Hooper's traffic misdemeanors for which he did jail time should not be included in the guidelines calculation.  (Doc. #62 at 8-9).  Johnston concluded that Hooper would end up with a category V criminal history and that a total offense level of 21 was applicable, which would place Hooper "within a 70-87-month sentencing guideline range and avoid the prospect of a Criminal History Category that over-represents the seriousness of his past criminal conduct."  (Doc. #53 at 7).

[4] 18 U.S.C. § 3553(a)(6) provides as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider--
>
> ***
>
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a)(6).

particularly considering Hooper's age, acceptance of responsibility, and "deep remorse" for his conduct.  (*Id.* at 9-10).

During the sentencing hearing on January 27, 2016, the Honorable Paul D. Borman found that Hooper's criminal history was "in no way . . . overstated."  (Doc. #62 at 20).  But Judge Borman "believe[d] that a significant variance downward [from the sentencing guideline range of 188-235 months] [was] appropriate."  (*Id.*).  Considering the Guidelines and the relevant factors – including that Hooper's criminal history score was "way above" that of the co-defendants – Judge Borman sentenced Hooper to 100 months of imprisonment on each of the two counts, to run concurrently.  (*Id.* at 20-21).  This sentence was well below the sentencing guideline range put forward by both sides in the plea agreement.  Judge Borman explained to Hooper that despite having waived his right to appeal his conviction if the sentence did not exceed 235 months – which it did not – he still had the right to appeal his conviction or sentence based on ineffective assistance of counsel.  (*Id.* at 22).  Judge Borman instructed Hooper that if he wished to appeal on this ground, he had to provide notice that he would be doing so within 14 days.  (*Id.*).  A judgment was later entered on February 11, 2016.  (Doc. #55).

Hooper did not challenge his sentence on direct appeal, but he filed the instant motion under § 2255 on May 18, 2017.[5]  (Doc. #67).  Hooper's arguments center around his classification as a career offender under § 4B1.1.  More specifically, he argues that following the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016), his prior controlled substance offenses under M.C.L. § 333.7401 no longer qualify as predicates for considering him a career offender.  (*Id.* at 3).  Hooper also asserts that certain prior convictions are "relevant conduct" that should not have been included in his criminal history calculation.  (*Id.* at 2-3).

---

[5] Hooper previously filed a *pro se* § 2255 motion on December 21, 2016 (Doc. #58), but withdrew it with the court's permission on April 20, 2017.  (Docs. #65, #66).

Finally, he claims that he received ineffective assistance of counsel because of how his guideline range was calculated, presumably due to the aforementioned issues regarding his career-offender status and relevant conduct.  (*Id.* at 1-2).  Hooper requests that his sentence be vacated and that he be resentenced to a term of incarceration provided by the "applicable" Guidelines.  (*Id.* at 4). For the reasons discussed below, Hooper's arguments lack merit.

> **B.    Legal Standard**

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" based on a claim "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a). To obtain relief, the petitioner must demonstrate the existence of "a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (*citing Hill v. United States*, 368 U.S. 424, 428 (1962)) (internal quotations omitted). There must be a showing of "the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *United States v. Green*, No. 13-cr-20098, 2014 WL 6871394, at *3 (E.D. Mich. Dec. 5, 2014) (citing *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005)).  Further, good cause and actual prejudice must be shown if these issues were not raised on appeal.  *See Harris v. Reed*, 489 U.S. 255, 258 (1989).

> **B.    Discussion**
>> *1.    Career-Offender Status*

6

Hooper takes issue with his classification as a career offender under § 4B1.1.  Relying largely on *Mathis*, 136 S.Ct. 2243, Hooper contends that his prior controlled substance offenses under M.C.L. § 333.7401 do not qualify as predicates for considering him a career offender. (Docs. #67 at 3; #74 at 18).  This argument lacks merit for a few reasons.

First, *Mathis* itself is not directly applicable here.  In *Mathis*, the Supreme Court considered whether the Armed Career Criminal Act's ("ACCA") general rule "that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense" yields to statutes that "enumerate[] various factual means of committing a single element." *Mathis*, 136 S.Ct. at 2249-51.  The Court stood by its longstanding elements-based inquiry for carrying out an ACCA analysis:  "For more than 25 years, we have repeatedly made clear that application of the ACCA involves, and involves only, comparing elements. . . . And that rule does not change when a statute happens to list possible alternative means of commission . . . ." *Id.* at 2257.  Thus, "*Mathis* itself involved the ACCA, not the career offender guidelines" and "addressed analysis of the generic form of burglary, not the meaning of 'serious drug offense' under the ACCA, or 'controlled substance offense' under the career offender enhancements," which are at issue in this case. *Day v. United States*, No. 1:17-cv-351, 2017 WL 6765371, at *3 (W.D. Mich. Sept. 5, 2017).

Second, even applying the principles espoused in *Mathis* as Hooper urges (Doc. #74 at 19) ("[I]f the Court were to focus solely on whether the elements of the crime of conviction sufficiently match the elements of the generic offense, as in [*Mathis*], the Court would hold . . . that a state crime cannot qualify as [a career offender] predicate if its elements are broader than those of a listed generic offense."), his prior narcotics convictions make him a "career offender" under § 4B1.1.  As noted above, a defendant is considered a career offender under § 4B1.1 if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Hooper's challenge to his career-offender status relates exclusively to the third prong: whether his prior offenses under M.C.L. § 333.7401 constitute "two prior felony convictions of . . . a controlled substance offense." (*Id.*). As used in § 4B1.1, a controlled substance offense is

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

"In order to determine whether a defendant's prior conviction is a 'controlled substance offense' for purposes of § 4B1.1, the Sixth Circuit has adopted a 'categorical' approach.'" *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006) (internal citations omitted); *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) ("To decide whether a given conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1(a), we generally use the 'categorical approach.'" (citing *Mathis*, 136 S.Ct. at 2248-49)). Under the categorical approach, the court "focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *United States v. Solomon*, 582 F. App'x 359, 360-61 (6th Cir. 2014) (quoting *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013)). The facts are irrelevant, and "the focus of the categorical approach is on the *elements* of a defendant's prior convictions." *United States v. Covington*, 738 F.3d 759, 762 (6th Cir. 2014) (emphasis in original) (citing *Descamps v. United States*, 133 S.Ct. 2276, 2283-87 (2013)).

8

"But where the statute of conviction is 'divisible' – i.e., lists elements in the alternative such that the statute 'comprises multiple, alternative versions of the crime' – [the Sixth Circuit] employ[s] the 'modified categorical approach.'" *House*, 872 F.3d at 753 (quoting *Descamps*, 133 S.Ct. at 2284).   The modified categorical approach "entails sorting through the alternative elements to determine whether any of them 'matches an element in the generic offense,' and if one does, 'consult[ing] a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction.'" *Id.* (quoting *Descamps*, 133 S.Ct. at 2281; citing *Mathis*, 136 S.Ct. at 2248-49).   The documents that a sentencing court may consult include the "charging document, written plea agreement, transcript of [the] plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *United States v. Robinson*, 333 F. App'x 33, 35 (6th Cir. 2009) (quoting *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006)).   "[T]he purpose of the modified categorical approach is not to determine the factual basis of the prior plea, but rather the *version of the crime* to which the defendant pled guilty" when "a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes." *Covington*, 738 F.3d at 763 (emphasis in original) (citing *Descamps*, 133 S.Ct. at 2284; quoting *Descamps*, 133 S.Ct. at 2285).

The modified categorical approach "merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.   [It] thus acts not as an exception, but instead as a tool." *Id.* (quoting *Descamps*, 133 S.Ct. at 2285).   In doing so, the modified categorical approach "retains the categorical approach's central feature:  a focus on the elements, rather than on the facts, of a crime.  And it preserves the categorical approach's basic method:   comparing those elements . . . ." *Id.* (same) ("The modified approach does not authorize a sentencing court to substitute . . . a facts-based inquiry for an elements-based one."

9

(quoting *Descamps*, 133 S.Ct. at 2293)).  In other words, if the modified categorical approach applies, the court uses it to determine the statutory phrase that was the basis for the conviction. *Descamps*, 133 S.Ct at 2284-85 (2013).  The court then applies the categorical approach using that particular statutory phrase and compares it to the relevant generic offense.  *Id.*; *see also Mathis*, 136 S.Ct. 2249.

In his motion, Hooper states that under *Mathis*, 136 S.Ct. 2243, a court determining whether a defendant is a career offender should apply either the categorical approach or the modified categorical approach depending on whether the statute at issue is divisible or not divisible.  (Doc. #67 at 3).  While this is an accurate recitation of the law, Hooper then immediately concludes – without further elaboration – that "[t]herefore, Michigan's M.C.L. § 333.7401 falls squarely within the language of Mathis [sic] and DesCamps[6] [sic]; this . . . is ground[s] for the Honorable Court to vacate and remand [his] sentence for resentencing."  (*Id.*).  This argument lacks merit.

M.C.L. § 333.7401 provides, in relevant part, that "[e]xcept as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form. . . ." M.C.L. § 333.7401(1).  As the Government points out, "Hooper does not detail . . . which part of the statute is divisible, whether the issue is multiple means or multiple elements[,] or how the

_____

[6] Although referenced in his concluding sentence, Hooper does not mention a case by the name of "*DesCamps*" anywhere else in his motion.  (*See* Doc. #67 at 3).  He presumably is referring to *Descamps v. United States*, 133 S.Ct. 2276 (2013), in which the Supreme Court ruled that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."  *Id.* at 2282.  The Court determined that sentencing courts "may [instead] use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.* at 2293.  Hooper references *Descamps* in his reply (Doc. #74 at 16-17), but does not explain how it supports his position.  The Government does not dispute that an elements-based approach applies in Hooper's case.  (*See* Doc. #73 at 9-11).

modified categorical approach should or should not apply." (Doc. #73 at 10). Hooper's twenty-nine-page reply sheds some light on these questions, but does not answer them fully. His reply largely quotes case law from the Second, Third, Fourth, Fifth, and Ninth Circuits in an effort to show that Sixth Circuit case law is unpersuasive. (Doc. #74 at 6) (contending "that the Court's decision in [*United States v. Tibbs*, 685 F. App'x 456 (6th Cir. 2017)] was unpublished for a reason and that is because the persuasiveness of its reason is at odds with many of its sister circuits"). However, at no point does Hooper apply the law he quotes from outside circuits to the facts of his own case. Rather, he simply argues that M.C.L. § 333.7401[7] is "clearly overbroad" and "criminalizes conduct" not in the Guidelines because the terms "deliver" and "create" do not match the language that appears in § 4B1.1.[8] (*Id.* at 3, 19). In Hooper's view, these additional terms create "ambiguity and confusion," which leads to "overcriminalizing statutes, . . . arbitrary enforcements[,] and exposing statutes to concerns of vagueness." (*Id.* at 19). He appears to argue that because the words "deliver" and "create" criminalize conduct that falls outside the Guidelines, "both of his prior convictions used to enhance his sentence [are] no longer proper career offender predicates." (*Id.* at 19-20). This argument lacks merit.

The Sixth Circuit has held that M.C.L. § 333.7401, "Michigan's controlled-substance statute[,] is divisible." *House*, 872 F.3d at 753 (citing *Tibbs*, 685 F. App'x at 461-64). In other words, "M.C.L. § 333.7401 contains separate offenses, not alternative means of committing the

---

[7] Hooper cites to M.C.L. § 333.7401(2)(a)(iv) (Doc. #74 at 19), but he presumably meant to cite to M.C.L. § 333.7401(1), which is the provision that lays out the elements at issue.

[8] Hooper also seems to argue that the words "possession" and "possession with intent to deliver or sell" do not appear in § 4B1.2(b) of the Guidelines. (Doc. #74 a 3). But a simple reading of § 4B1.2(b) shows that the word "possession" is, in fact, included. The Guidelines also contain the phrase "possession . . . with intent to . . . distribute." U.S.S.G. § 4B1.2(b). As explained below, "possession with intent to deliver" falls within "possession . . . with intent to . . . distribute" in the Guidelines. *See infra* at 12-13. Meanwhile, neither § 4B1.2 nor M.C.L. § 333.7401 contain the word "sell." This term is therefore irrelevant to the Court's analysis under the categorical approach and the modified categorical approach.

same offenses." *United States v. Jackson*, No. 14-20133, 2017 WL 6493255, at \*4 (E.D. Mich. Dec. 19, 2017) (quoting *Tibbs*, 685 F. App'x at 463).   Applying the modified categorical approach, the Court notes that Hooper's Sentencing Memorandum and Request for Variance explains that his career-offender status is based "solely" on the following prior offenses:   (1) possession with intent to deliver less than 50 grams of cocaine from April 24, 2008; and (2) delivery of less than 50 grams of cocaine from December 15, 2008.   (Doc. #53 at 4-5).[9]   For the reasons explained below, both of these convictions under M.C.L. § 333.7401 were for a controlled substance offense within the meaning of § 4B1.2(b) of the Guidelines.

As for Hooper's conviction under M.C.L. § 333.7401 for possession with intent to deliver a controlled substance, this conviction overlaps with § 4B1.2(b)'s element prohibiting the possession of a controlled substance with intent to distribute.   In a recent decision, the Sixth Circuit determined that "possession with intent to deliver [from Michigan's controlled-substance law] [] fits . . . the Sentencing Guidelines' generic offense [of] possession with intent to distribute or dispense."   *House*, 872 F.3d at 753-54.[10]   Although the Michigan statute uses the word "deliver" and the Guidelines say "distribute," the Sixth Circuit has held that "'deliver' [in M.C.L. § 333.7401] plainly falls within the meaning of 'distribute' in § 4B1.2(b)."   *Solomon*, 582 F. App'x at 361.   This same holding also applies to Hooper's conviction for delivery of a

---

[9] Neither party has supplied documents to the Court from Hooper's underlying criminal cases, and in his motion, Hooper merely states that both of his prior convictions were for "prior offenses under M.C.L. § 333.7401," but he does not indicate the specific conduct for which he was convicted.   (Doc. #67 at 3).   The offenses analyzed herein are listed in Hooper's own Sentencing Memorandum and Request for Variance (Doc. #53 at 4-5), in his reply brief (Doc. #74 at 2, 26-27), and on a worksheet attached to his Rule 11 plea agreement (by abbreviation, at least).   (Doc. #44 at 12).   Neither side has challenged that this was the nature of the conduct for which Hooper was found guilty and which formed the basis of his career-offender status.

[10] Hooper cites to this case (and quotes this exact language) in his reply, but fails to explain why this ruling does not apply to his own case, which involves the same drug offense under Michigan law.   (Doc. #74 at 5-6).

controlled substance; the "delivery" element in M.C.L. § 333.7401 overlaps with § 4B1.2(b)'s element prohibiting the "distribution" of a controlled substance.  *Id.*; *Day*, 2017 WL 6765371, at *3 ("The elements of delivery . . . [of] cocaine in violation of [M.C.L.] § 333.7401 are not broader than the generic federal offense." (internal citations omitted)).  As a result, Hooper's 2008 convictions under M.C.L. § 333.7401 – possession with intent to deliver a controlled substance and delivery of a controlled substance – constitute two prior felony convictions for controlled substance offenses under § 4B1.2(b).  *See Solomon*, 582 F. App'x at 361-62.  Both of these convictions were punishable by imprisonment for a term exceeding one year.  *See* M.C.L. § 333.7401(2)(a)(iv).  This also places both state-law convictions within the ambit of § 4B1.2(b). *See Solomon*, 582 F. App'x at 361.

In sum, Hooper's argument that M.C.L. § 333.7401 is "clearly overbroad"[11] and contains "additional terms . . . the government sought to rely on" fails.  (Doc. #74 at 19).  *See also Day*, 2017 WL 6765371, at *3 (holding that under *Mathis*, "determining that the elements of "delivery or manufacturing cocaine in violation of [M.C.L.] § 333.7401 are not broader than the generic federal offense").  Accordingly, Hooper's prior felony convictions were properly considered controlled substance offenses for purposes of the Guidelines, and he was correctly found to be a career offender.  *House*, 872 F.3d at 754 (holding that because "[t]he alternative crime in question from Michigan's controlled-substance law" of possession with intent to deliver fit the sentencing guidelines' generic offense and the defendant's charge from his indictment, the defendant's "three prior felony drug convictions [counted] toward his career-offender

---

[11] To the extent Hooper argues that the Michigan statute is overbroad because the word "create" does not appear in the Guidelines, a recent decision by Chief Judge Denise Page Hood in *Jackson*, 2017 WL 6493255, is directly on point.  There, "[t]he [c]ourt reject[ed] Defendant's argument that the word 'create' under M.C.L. § 333.7401 is broader than the conduct that satisfies the definition of a 'controlled substance offense' [under § 4B1.2(b)]" because "[t]he Guidelines specifically prohibit the 'manufacture' of a controlled substance – and manufacture and create are synonymous."  *Jackson*, 2017 WL 6493255, at *4.

13

enhancement"); *Solomon*, 582 F. App'x at 361-62. Hooper's motion should be denied.

2.    *Relevant Conduct*

Hooper also argues that certain of his prior convictions should have been considered "relevant conduct" under § 1B1.3 of the Guidelines and should not have been used in calculating his prior criminal history. (Doc. #67 at 2). Hooper does not specify what prior convictions he is referring to, nor does he explain why they "fall squarely within the definition laid out [for relevant conduct] in § 1B1.3." (*Id.*). In its response, the Government construes Hooper's motion as referring to "three previous 2009 convictions in the Oakland County Circuit Court," which it argues "could in no way be relevant conduct to offenses that would occur five years in the future." (Doc. #73 at 7). Hooper did not dispute this interpretation in his reply, and his argument lacks merit, at any rate.

"Section 4A1.1 of the Guidelines instructs a court, when determining a defendant's criminal history category, to add a certain number of points for each prior sentence of imprisonment."[12] *United States v. Mize*, No. 00-3079, 2000 WL 1785741, at *4 (6th Cir. Nov. 21, 2000). However, "prior sentences in cases related to the offense of conviction are not counted as a prior sentence, but instead deemed relevant conduct to the instant offense under § 1B1.3." *United States v. Young*, 310 F. App'x 784, 798 (6th Cir. 2009) (citing U.S.S.G. § 4A1.2, cmt. n.1). "U.S.S.G. § 1B1.3(a)(1)(A) defines 'relevant conduct' as 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for the offense." *United States v. Jackson*, No. 08-20147, 2009 WL 3497789, at *5 (E.D. Mich. 2009).

---

[12] "A prior sentence of imprisonment is defined in USSG § 4A1.2 as 'any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense.'" *United States v. Mize*, No. 00-3079, 2000 WL 1785741, at *4 (6th Cir. Nov. 21, 2000).

Moreover, "[u]nder the Guidelines, 'relevant conduct' means conduct that is 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Gales*, 137 F. App'x 875, 876 (6th Cir. 2005) (citing U.S.S.G. §§ 1B1.3(a)(2), 5Cl.2, cmt. n.3).   This definition applies to prior drug dealings "if they constitute a 'common scheme or plan' or are 'part of the same course of conduct.'" *United States v. Brown*, 332 F.3d 363, 375 (6th Cir. 2003).   Offenses are considered to be "part of the same 'course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.'" *Gales*, 137 F. App'x at 876 (quoting U.S.S.G. § 1B1.3, cmt. n. 9(b)).   The Guidelines instruct courts assessing whether offenses are within the same course of conduct to consider the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* (quoting U.S.S.G. § 1B1.3, cmt. n. 9(b); citing *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996)). Meanwhile, offenses are considered to be part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.* at 876-77 (quoting U.S.S.G. § 1B1.3, cmt. n. 9(a)).

A worksheet attached to Hooper's Rule 11 plea agreement reflects that he had multiple convictions in 2009:   (1) felon in possession of a firearm or carrying a concealed weapon on July 2, 2009; (2) delivery or manufacture of a controlled substance, carrying a concealed weapon, and assaulting a police officer on May 26, 2009; and (3) delivery or manufacture of a controlled substance involving a gun on May 28, 2009.   (Doc. #44 at 12).   The Government notes that Hooper's sentences for these convictions were imposed well prior to the conduct in this case,[13]

---

[13] As to Hooper's July 2, 2009 conviction for felon in possession of a firearm or carrying a concealed weapon, the worksheet says his sentence was "[d]ismissed."  (Doc. #44 at 12).

15

and argues that these convictions "were properly scored as part of his criminal history under Chapter 4 of the Sentencing Guidelines." (Doc. #73 at 7). The Court agrees.

Under the above standards, Hooper's prior convictions are not "relevant conduct." First, although Hooper seems to argue that there is a "geographical" overlap[14] (Doc. #67 at 2), there is no indication that his 2009 offenses were part of the same course of conduct or part of a common scheme or plan because there is no apparent link between them and his 2014 conviction. (Doc. #74 at 7). In addition to the lack of a demonstrated connection between the offenses, "the time interval factor is weak." *United States v. Disney*, No. 95-538, 1995 WL 704155, at *3 (6th Cir. Nov. 28, 1995). Even though Hooper had prior drug convictions in 2009 and "generally speaking, multiple sales of cocaine should be treated as relevant conduct," this "does not mean that it is always appropriate to do so." *Id.* at *2. Here, Hooper's prior convictions, which occurred 5 years before the charged conduct, are too temporally attenuated to be considered "relevant conduct." *Id.* at *3 (holding that "[a] duration of eight months between [drug] transactions, without evidence of circumstances connecting the two events, is long enough to suggest that the two transactions are not part of the same course of conduct. . . . [W]e find the time lapse between incidents in this case to be sufficiently lengthy that it heavily influences our

---

[14] Hooper states that the factors to consider in making a relevant-conduct determination include "temporal and geographical proximity (as in Hooper's known zones of sales/possession); common victims (addicts); common scheme (support of lifestyle); temporal [(]time frame) both being close to the relevant dates of the indictment." (Doc. #67 at 2). But not only does Hooper omit the source of this quote, he also does not apply these factors to the facts of his case, other than to say that "there was a known geographical area" that law enforcement and the court knew him to be in. (*Id.*). This bare assertion is insufficient to establish relevant conduct. Furthermore, Hooper "relies" on something he calls the "essential characteristics of the crime" test and seems to argue that it should apply. (*Id.*). But he never explains why or cites to any authority. Regardless, the Sentencing Commission has "rejected the 'essential characteristics' approach" in favor of the "common sense approach," which "is now the proper guide for determining whether a misdemeanor is similar to the listed offenses listed under § 4A1.2(c)." *United States v. Kitchen*, 428 F. App'x 593, 599 (6th Cir. 2011). Thus, the "essential characteristics" approach is inapplicable here and does nothing to support Hooper's request under § 2255.

ultimate determination that the two transactions were not part of the *same* course of conduct." (emphasis in original) (internal citation omitted)).

In sum, Hooper's 2009 convictions are not "relevant conduct," and were properly used in determining his prior criminal history.

### 3.    *Ineffective Assistance of Counsel*

Hooper argues that "had attorney Johnston evaluated his Criminal History . . . instead of following the Government's calculation, [his] sentence would not have had a procedural error that has caused Hooper's sentence to be substantially and procedurally unreasonable and unfair." (Doc. #67 at 1).   According to Hooper, it was Johnston's responsibility to verify the aspects of Hooper's "Offense Level" and "Criminal History Points" "to ensure that these items [were] accurate."   (*Id.*).   He contends that Johnston's "deficiency in his duties" led to his guideline range being "in excess of the proscribed guidelines that [the court] could have deemed appropriate."   (*Id.* at 2).   Hooper argues that, as a result of Johnston's alleged error, his sentence violates (1) his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments; and (2) the following provisions:  §§ 1B1.3, 4A1.1, 4A1.2, and 4B1.1.   (*Id.* at 1).   Notably, he does not provide any details regarding these alleged violations.

A claim of ineffective assistance of counsel requires a petitioner to meet a two-part test. To prevail, he must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness; and (2) this deficient performance was prejudicial to the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   For counsel's performance to be deemed deficient, a defendant must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," with "judicial scrutiny of counsel's performance [being] highly deferential."   *Id.* at 689.   Moreover, "deficient" lawyering

requires professional service that was worse than merely "inadequate; rather it . . . [means a performance that] was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Rather than use hindsight, the court "must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotations omitted). With respect to the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.*

This test is equally applicable in cases where the defendant pleads guilty; "[t]he *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea." *Hannah v. Bock*, 447 F. Supp. 2d 798, 805 (E.D. Mich. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Where the defendant pleads guilty, he "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Missouri v. Frye*, 132 S.Ct. 1399, 1403 (2012)). Here, "[t]he first prong of the test remains the same" as laid out above. *Hannah*, 447 F. Supp. 2d at 805 (citing *Hill*, 474 U.S. at 58). But to meet the second prong, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill*, 474 U.S. at 58; citing *Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003)); *Pough*, 442 F.3d at 966. Thus, "the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hannah*, 447 F. Supp. 2d at 805 (citing *Hill*, 474 U.S. at 59); *see Utley v.*

*United States*, No. 12-20160, 2016 WL 337750, at *6 (E.D. Mich. Jan. 28, 2016).  "The Court does not need to 'address both components of the inquiry if the defendant makes an insufficient showing on one.'"  *Green*, 2014 WL 6871394, at *3 (quoting *Strickland,* 466 U.S. at 697).

Hooper fails to properly assert an ineffective assistance of counsel claim against Johnston.  The Court need not reach the question of whether Johnston's representation fell below an objective standard of reasonableness because even if his representation did fall below that standard,[15] Hooper cannot show that he was prejudiced as a result.  *See Strickland*, 466 U.S. at 694; *see also Hill*, 474 U.S. at 60 (declining to reach the performance prong because the defendant did not show that he would have rejected the plea agreement but for his counsel's ineffective assistance); *see also Humphress*, 398 F.3d at 859 (determining that the defendant's ineffective assistance of counsel claim must fail – without analyzing the attorney's performance and even assuming that the attorney's performance was constitutionally deficient – due to the defendant's failure to establish the prejudice prong (citing *Strickland*, 466 U.S. at 697)).  Hooper has not established that, but for the allegedly flawed representation, the adjudication of the charges against him would have been different; he does not allege that he would have rejected the plea agreement and would have instead insisted on going to trial.  *See Hannah*, 447 F. Supp. 2d at 805 (citing *Hill*, 474 U.S. at 58); *Mathis v. United States*, No. 13-20262, 2015 WL 5439246, at *4-5 (E.D. Mich. Sept. 15, 2015), *aff'd* (Apr. 7, 2016).  Ultimately, Hooper does not demonstrate a reasonable probability that the plea process would have gone differently but for Johnston's representation.

---

[15] Hooper's claim seems to be that Johnston failed to make the arguments the Court addressed above about the impact Hooper's prior convictions had on his Guidelines calculation.  But the Court has rejected those arguments, and Johnston cannot be deemed ineffective for not raising arguments that fail as a matter of law.  *Rice v. White*, No. 2:06-CV-11610, 2010 WL 1347610, at *19 (E.D. Mich. Mar. 31, 2010), *aff'd*, 660 F.3d 242 (6th Cir. 2011) ("Failure of defense counsel to pursue frivolous or meritless motions and objections cannot constitute ineffective assistance of counsel." (citing *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1999))).

Nor has Hooper shown prejudice in terms of the sentence he received. Hooper argues that had it not been for Johnston's supposed miscalculation of the Guidelines, his sentence "would not [be] procedurally and substantively unreasonable" because the court would have "deemed appropriate" a different guideline range. (Doc. #67 at 2). But Hooper never says in what way Johnston erred in his calculation, nor does Hooper explain what the proper guideline range should have been. This argument fails because it is undeveloped and speculative. The Sixth Circuit has noted that "[u]nder the *Hill* standard, ineffective assistance claims do not turn on . . . speculative considerations." *Mathis*, 2015 WL 5439246, at *5 (quoting *Short v. United States*, 471 F.3d 686, 696 (6th Cir. 2006)). For example, in *Mathis*, the defendant argued that his attorney's lack of diligence during plea negotiations prejudiced him because he was sentenced to additional years in prison – as compared to what his sentence would have been had he plead guilty to a lesser charge. *Id.* The court noted that like in *Short*, 471 F.3d at 696, the *Mathis* defendant did not allege that he wanted to go to trial, or that he would have gone to trial; rather, the defendant "simply want[ed] a new deal and there is no basis to conclude that the Government would have agreed to the scenario [he] promote[d], [and] that he could have plead to the [lesser charge]." *Mathis*, 2015 WL 5439246, at *5. Given this, the court held that having presented such "speculative considerations," the defendant "fail[ed] to show that he [had] suffered prejudice as a result of counsel's performance." *Id.* (citing *Short*, 471 F.3d at 696).

Here, like the defendant in *Mathis*, Hooper has failed to show prejudice because he relies on speculative considerations regarding a potentially lower sentence. Hooper provides no basis to conclude that but for Johnston's alleged deficient representation, the court would have considered a lower guideline range, as he proposes might have happened. Moreover, Hooper seems to overlook that Johnston requested that the court grant him a variance to 60 months,

20

based in part on his calculation of the sentencing guideline range "absent the career offender enhancement" and assessing points for only his 2008 felony offenses.   (Doc. #53 at 7). Regardless, Hooper's 100-month sentence was a significant downward variance from the sentencing guideline calculation of 188-235 months, which both sides agreed was the applicable guideline range in the plea agreement.   (Docs. #44 at 3; #62 at 5, 21).   Indeed, at the sentencing hearing, Hooper did not object to this calculation or mention any disagreement with it when he addressed the court.   (Doc. #62 at 5, 13-16).   He likewise made no corrections to the presentence report.   (*Id.* at 4).

Hooper's argument is also belied by the fact that when he signed the plea agreement on June 15, 2015, he indicated that he was "satisfied with his attorney's advice and representation" and that "all of his questions [had been] answered by his lawyer."   (Doc. #44 at 9).   Two days later, at his plea hearing on June 17, 2015, Hooper testified orally before the court that he was satisfied with his attorney's advice.   (Doc. #63 at 11).   Moreover, at his sentencing, Judge Borman stated on the record that Johnston did his job "very well" (Doc. #62 at 20) and that he thought Johnston "did an outstanding job" representing Hooper.   (*Id.* at 23).

In sum, given that Hooper has failed to make the required showing of prejudice under *Strickland*, "he therefore has failed to establish that his counsel's assistance was ineffective." *Harris v. United States*, No. 95-3528, 1996 WL 33253, at *2 (6th Cir. Jan. 26, 1996) (citing *Strickland*, 466 U.S. at 687).

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Hooper's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence **(Doc. #67)** be **DENIED**.

## IV.   CERTIFICATE OF APPEALABILITY

A habeas petitioner must receive a Certificate of Appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[16]  28 U.S.C. § 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must instead limit its examination to a threshold inquiry into the underlying merits of the petitioner's claims.  *Id.* at 336-37.

Based on this Court's recommendation regarding the merits of Hooper's claim, **IT ALSO RECOMMENDS** denying Hooper a COA, as jurists of reason would not find the Court's resolution of the claims to be debatable.

Dated: March 19, 2018                               s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                              United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

---

[16] Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts, 28 U.S.C. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  In light of this requirement, the Court includes here a recommendation regarding the certificate of appealability issue.

recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager